UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHLOEE HOLDEN | CIVIL ACTION |
| VERSUS | NO: 20-2143 |
| ALEJANDROS PERKINS, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE BOARD OF SUPERVISORS FOR THE UNIVERSITY OF LOUISIANA SYSTEM, ET AL. | SECTION: "J"(4) |

## ORDER AND REASONS

Before the Court is a *Motion to Dismiss* **(Rec. Doc. 12)** filed by Defendants, Alejandros Perkins, in his official capacity as Chair of the Board of Supervisors for the Louisiana System; John L. Crain, in his individual and official capacity as President of Southeastern Louisiana University; James Smoot; Jay Artigues; and Justin Bice (collectively "Defendants"). Plaintiff, Chloee Holden, opposes the motion (Rec. Doc. 15). Defendants filed a reply (Rec. Doc. 18). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL HISTORY

This litigation arises from Plaintiff's removal from the Southeastern Louisiana University volleyball team and the related decision not to renew Plaintiff's athletic scholarship. Plaintiff received an athletic scholarship to play volleyball at Southeastern Louisiana University for the academic year starting August 2016 and

1

running through May 2017. The scholarship was a contract that required Southeastern Louisiana University to provide Plaintiff with notice and a hearing opportunity if the scholarship was reduced, cancelled, or not renewed pursuant to NCAA Bylaw 15.3.7. The scholarship was renewed for the August 2017 through May 2018 academic year. In the fall of 2017, Plaintiff alleges that she and other teammates scheduled a meeting with Southeastern Louisiana University's Athletic Director, Jay Artigues, to discuss Coach James Smoot's alleged "emotionally abusive conduct." Shortly thereafter, Mr. Artigues notified Plaintiff that she was being removed from the team and that her volleyball scholarship was not being renewed for the following academic year. On November 1, 2017, Mr. Artigues sent an email to Plaintiff's mother notifying her of the school's decision and indicating that the decision was final. Plaintiff subsequently requested an appeal with Justin Bice, Southeastern Louisiana University's Assistant to the President for Athletics Compliance, but her request was denied.

On November 7, 2018, Plaintiff filed suit against Defendants in the 21st Judicial District Court for the Parish of Tangipahoa. Defendants removed the suit to federal court. Defendants then sought dismissal of Plaintiff's federal claims under Rule 12(b)(6). The Court granted Defendants' motion to dismiss Plaintiff's due process and equal protection claims, with prejudice; and remanded the remaining claims to state court. *Holden v. Perkins*, 398 F. Supp. 3d 16, 26 (E.D. La. 2019). The state court ordered Plaintiff to amend her complaint to cure deficiencies. The amended complaint re-alleged Plaintiff's due process and equal protections claims, which made it re-

removable. Defendants subsequently removed the case to this Court and amended her complaint to allege that this Court has diversity jurisdiction under 28 U.S.C. § 1332.

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true

legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## DISCUSSION

### I.  FEDERAL AND STATE DUE PROCESS

Plaintiff alleges that Defendants violated the due process clauses of the United States Constitution and Louisiana Constitution by failing to provide adequate notice and an opportunity for hearing concerning the non-renewal of her athletic scholarship. (Rec. Doc. 1-2 at pp. 6-7). In *Progressive Sec. Ins. Co. v. Foster*, the Louisiana Supreme Court held that the Louisiana Constitution's due process guarantee "does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution." 97-2985 (La. 4/23/98), 711 So. 2d 675, 688. Indeed, both parties agree that the analysis of the federal and state law due process claims are identical. (Rec. Docs. 12-1 at p. 10; 15 at p. 4). Accordingly, if Plaintiff's federal due process claim fails, then the state due process claim also fails.

Plaintiff alleges that her due process rights were violated due to Defendants' failure to provide adequate notice and an opportunity for hearing concerning the non-renewal of her athletic scholarship. (Rec. Doc. 1-2 at pp. 6-7). In order to state a claim for a due process violation, Plaintiff must allege (1) the deprivation of a protected property or liberty interest, and (2) that the deprivation occurred without due process of law. *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir. 1991). Plaintiff argues that she has property and liberty interests in her higher


education and property and liberty interests in the funding of her higher education. (Rec. Doc. 1-2 at p. 6).

The U.S. Supreme Court and Fifth Circuit have not recognized a property or liberty interest in the college admission decisions of public schools. *Holden*, 398 F. Supp. 3d at 23 (citing *Smith v. Davis*, 507 F. App'x 359, 362 (5th Cir. 2013)). Plaintiff cites *Plummer v. Univ. of Houston* to support her argument that she has a liberty interest in her higher education; however, in that case, the Fifth Circuit explained in a parenthetical that such a liberty interest was recognized under the Texas Constitution, which is not the same as the recognition of a right under the United States Constitution. 860 F.3d 767, 773 (5th Cir. 2017), as revised (June 26, 2017). Further, as this Court has previously explained, even if Plaintiff did have a protected interest in her higher education, she was not deprived of that interest because she was still permitted to attend Southeastern Louisiana University or attend any other school after her scholarship was revoked. *Id.*

In regard to Plaintiff's argument that she has protected interests in the funding of her education, this Court has previously held that Plaintiff had no "recognized property interest in the renewal of her year-to-year athletic scholarship." *Id.* at 23. Therefore, this Court held that Plaintiff failed to show the existence and infringement of a protected property or liberty interest and dismissed her federal due process claim. *Id.*

Although Plaintiff amended her complaint, it does not change the fact that Plaintiff does not have any protected interests in either her higher education or the

education and property and liberty interests in the funding of her higher education. (Rec. Doc. 1-2 at p. 6).

The U.S. Supreme Court and Fifth Circuit have not recognized a property or liberty interest in the college admission decisions of public schools. *Holden*, 398 F. Supp. 3d at 23 (citing *Smith v. Davis*, 507 F. App'x 359, 362 (5th Cir. 2013)). Plaintiff cites *Plummer v. Univ. of Houston* to support her argument that she has a liberty interest in her higher education; however, in that case, the Fifth Circuit explained in a parenthetical that such a liberty interest was recognized under the Texas Constitution, which is not the same as the recognition of a right under the United States Constitution. 860 F.3d 767, 773 (5th Cir. 2017), as revised (June 26, 2017). Further, as this Court has previously explained, even if Plaintiff did have a protected interest in her higher education, she was not deprived of that interest because she was still permitted to attend Southeastern Louisiana University or attend any other school after her scholarship was revoked. *Id.*

In regard to Plaintiff's argument that she has protected interests in the funding of her education, this Court has previously held that Plaintiff had no "recognized property interest in the renewal of her year-to-year athletic scholarship." *Id.* at 23. Therefore, this Court held that Plaintiff failed to show the existence and infringement of a protected property or liberty interest and dismissed her federal due process claim. *Id.*

Although Plaintiff amended her complaint, it does not change the fact that Plaintiff does not have any protected interests in either her higher education or the

renewal of her athletic scholarship. Thus, Plaintiff has failed to state due process claims under both the United States Constitution and Louisiana Constitution. Accordingly, both Plaintiff's federal and state due process claims must be dismissed.

## II. FEDERAL AND STATE EQUAL PROTECTION

Plaintiff also alleges that Defendants violated the equal protection clauses of the United States Constitution and Louisiana Constitution because she was the only athlete that lost her scholarship. Specifically, Plaintiff alleges a "class of one" personal vindictiveness claim. (Rec. Doc. 1-2 at pp. 7-8). Ordinarily, federal and Louisiana equal protection claims require separate analysis to determine whether each has been violated. *Menard v. Louisiana High Sch. Athletic Ass'n*, 2009-0800 (La. App. 1 Cir. 12/23/09), 30 So. 3d 790, 795. "However, where no fundamental or express constitutional right or "suspect" class (such as race or religion), nor any other enumerated class such as birth, age, sex, culture, or political affiliation, is alleged as the basis for discrimination, the use of another classification is subject to the minimal or lowest level of scrutiny under the guarantees of **both** constitutions. *Id.* (emphasis added). Thus, in order to survive Defendants' motion to dismiss her equal protection claims, Plaintiff must have alleged facts which plausibly state that: (1) she was treated differently from others similarly situated, and (2) there was no rational basis for the disparate treatment. *Vill. of Willowbrook v. Olech*, 120 S. Ct. 1073, 1074 (2000).

This Court previously held that Plaintiff failed to establish a federal class of one equal protection claim because the e-mail from Mr. Artigues, Southeastern

Louisiana University's Athletic Director, to Plaintiff's mother suggested multiple rational reasons why Defendants may have denied an opportunity for notice and hearing prior to advising her of the decision not to renew her athletic scholarship. *Holden*, 398 F. Supp. 3d at 26. Specifically, Defendants may have determined that it was necessary to make a final decision to remove Plaintiff from the volleyball team and not renew her athletic scholarship on the basis of her athletic ability, her ability to be coached, her attitude, and/or her ability as a teammate. *Id.* Nothing in Plaintiff's amended complaint suggests that these were not rational bases for Defendants' decision to remove her from the volleyball team and their related decision not to renew her athletic scholarship. Therefore, Plaintiff has failed to state "class of one" equal protection claims under both the United States Constitution and Louisiana Constitution.

### III.   INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff argues that Defendants should also be held liable under theories of intentional and negligent infliction of emotional distress. (Rec. Doc. 1-2 at pp. 4-5). To recover under a theory of intentional infliction of emotional distress, a plaintiff must demonstrate that a defendant engaged in extreme and outrageous conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). Normally, negligent infliction of emotional distress requires an accompanying physical injury; however, under special circumstances, a plaintiff may recover under a theory of negligent infliction of emotional distress without an accompanying physical injury when the defendant's conduct was extreme and outrageous. *Moresi v. State Through Dep't of*

7

*Wildlife & Fisheries*, 567 So. 2d 1081, 1095 (La. 1990). Thus, in order to have successfully stated a claim for either intentional or negligent infliction of emotional distress, Plaintiff must have plausibly demonstrated that Defendants engaged in extreme and outrageous conduct.

Extreme and outrageous conduct is a high threshold. *Nicholas v. Allstate Ins. Co.*, 1999-2522 (La. 8/31/00), 765 So. 2d 1017, 1028. "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not meet this high threshold. *White*, 585 So. 2d at 1209. This high threshold is only met when the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.*

Plaintiff argues that Coach Smoot engaged in extreme and outrageous conduct when he made racially offensive and insensitive comments about Plaintiff's hair and the hair of other African American players. (Rec. Doc. 1-2 at p. 4). Plaintiff does not provide any details regarding the content of the alleged racially offensive comments made by Coach Smoot. Instead, Plaintiff merely asserts that Coach Smoot made racially offensive comments about her hair. This is a conclusory allegation because it does not allow the Court to evaluate the content of the alleged comment, and thus, this allegation is insufficient to state a claim.

Plaintiff also alleges that Coach Smoot's conduct was extreme and outrageous when he: (1) berated Plaintiff in front of her teammates and made her run drills for longer than her teammates, and (2) threatened to cut Plaintiff and her teammates'

scholarships by 40% when he deemed that insufficient effort was being put forth. (Rec. Doc. 1-2 at p. 4). "[D]isciplinary action and conflict in a pressure-packed … environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable." *Id.* at 1210. Although this should be obvious, coaches have discretion to discipline their players. *Bonner v. Lincoln Par. Sch. Bd.*, 28,993 (La. App. 2 Cir. 12/11/96), 685 So. 2d 432, 435. Given this discretion and that coaches are employed to train their players, it would be absurd to hold that Coach Smoot engaged in extreme and outrageous conduct by requiring Plaintiff to run extra drills, especially since he apparently believed that Plaintiff was not putting in sufficient effort. Thus, although Coach Smoot's threat to cut the players' scholarships may have caused some emotional distress, this Court will not interfere with his decision to use such a threat as a motivator because it does not rise to the level of extreme and outrageous conduct given the relationship between coaches and players.

Finally, Plaintiff argues that Coach Smoot's decision to remove her from the volleyball team when she attempted to voice her complaints to Mr. Artigues rises to the level of extreme and outrageous conduct. (Rec. Doc. 1-2 at p. 4). Although purely retaliatory conduct could rise to the level of extreme and outrageous conduct, Plaintiff's complaint does not plausibly state that this is the reason that she was removed from the team. First, it is clear from Plaintiff's other arguments that Coach Smoot believed the players were not working hard enough, and the fact that Plaintiff was singled out and forced to run more than her teammates demonstrates that he was particularly concerned about her performance. In addition, Plaintiff's complaint

9

alleges that multiple players attempted to report Coach Smooth's conduct, but only Plaintiff was removed from the team, which shows that the decision to remove her from the team was not purely retaliatory.

Further, under Louisiana law, "a personnel decision, even if it is wrong, does not give rise to an intentional infliction of emotional distress claim." *Kell v. Iberville Bank*, 352 F. Supp. 3d 650, 663 (E.D. La. 2018) (citing *Nicholas*, So. 2d at 1027). Although this principle generally applies in the employment context, Coach Smoot's decision to remove Plaintiff from the team is comparable to the termination of an at-will employee in that he has the power to remove players from the team. "Liability does not attach where the actor has done no more than to insist on his legal rights in a permissible way, even though he is aware that such insistence is certain to cause emotional distress." *White*, 585 So. 2d at 1210. Accordingly, Plaintiff has failed to demonstrate that Coach Smoot engaged in extreme and outrageous conduct.

In addition to her claims against Coach Smoot, Plaintiff also argues that Mr. Artigues engaged in extreme and outrageous conduct by refusing to meet with her after Coach Smoot's decision to remove her from the team, and Mr. Bice did the same by denying her request for appeal. (Rec. Doc. 1-2 at p. 4). Defendants argue that the allegations reflect primarily on Coach Smoot's conduct, for which Mr. Artigues and Mr. Bice cannot be found liable as co-employees. The Court agrees. Even if the Court had found that Coach Smoot's conduct was extreme and outrageous, Mr. Artigues and Mr. Bice simply cannot be found liable for such conduct without further allegations of personal involvement in or knowledge of Coach Smoot's conduct.

In addition, the Court finds that Mr. Artigues and Mr. Bice's own conduct did not meet the high threshold of being extreme and outrageous because their decisions not to review Coach Smoot's decision to remove Plaintiff from the volleyball team were in no way "atrocious and utterly intolerable in a civilized community." *White*, 585 So. 2d at 1209. Accordingly, Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress should be dismissed because she has failed to demonstrate that any of the Defendants engaged in extreme and outrageous conduct.

## IV. ABUSE OF RIGHTS

Plaintiff also has alleged a claim of abuse of rights against Defendants. (Rec. Doc. 1-2 at p. 4). Abuse of rights occurs when the holder of a right exercises his right, and: (1) "the predominant motive for exercise of the right is to cause harm;" (2) "there is no serious or legitimate motive for exercising the rights;" (3) "the exercise of the right violates moral rules, good faith, or elementary fairness;" or (4) "the exercise of the right is for a purpose other than that for which it was granted." *St. Germain v. Coulon*, 887 So.2d 608 (La. App. 5 Cir. 2004). Plaintiff specifically argues that Defendants' exercise of their right to remove Plaintiff from the volleyball team without notice and/or an opportunity hearing as required by her scholarship and NCAA bylaws violated moral rules, good faith, or elementary fairness. (Rec. Doc. 1-2 at p. 4).

"Louisiana courts are loath to invoke the abuse of rights doctrine because its 'application renders unenforceable one's otherwise judicially protected rights.'"

11

*Harrison v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.*, No. CIV.A. 04-1651, 2004 WL 2984815, at *4 (E.D. La. Dec. 9, 2004) (citing *Lee v. Pennington*, 830 So.2d 1037, 1043 (La. App. 4th Cir.2002). Although the abuse of rights doctrine includes claims arising from contractual relationships, Louisiana courts rarely find abuse of rights in the framework of obligations and contracts. A.N. Yiannopoulos, *Civil Liability for Abuse of Right: Something Old, Something New...*, 54 La. L. Rev. 1173, 1185 (1994). This is likely because the duty to perform contractual obligations in good faith was incorporated into the 1984 revisions of the law of conventional obligations and contracts. *See id.*

Although there is significant overlap between the duty to perform contractual obligations in good faith and the abuse of rights doctrine, Plaintiffs claim for abuse of rights is more appropriately classified as a breach of contract claim. Plaintiff argues that Defendants abused their "right" to not renew Plaintiff's scholarship; however, under the terms of Plaintiff's scholarship, Defendants were required to provide Plaintiff with notice and an opportunity for hearing before making a final decision to not renew her scholarship. In other words, Defendants did not have the right to not renew Plaintiff's scholarship without first providing notice and an opportunity for hearing. Therefore, viewing the allegations in Plaintiff's complaint in the light most favorable to Plaintiff, her abuse of rights claim must fail because Defendants did not actually exercise a right, but instead, breached the terms of the contract tied to Plaintiff's scholarship.

**V.    DR. CRAIN AND MR. PERKIN'S PERSONAL LIABILITY**

Plaintiff also seeks to hold Dr. John Crain, President of Southeastern Louisiana University, and Alejandros Perkins, Chair of the Board of Supervisors for the University of Louisiana System, personally liable for the conduct of Coach Smoot, Mr. Artigues, and Mr. Bice. (Rec. Doc. 1-3 at pp. 4-9). Under the *Canter* doctrine, an officer, agent, or employee may only be personally liable for damages when: (1) the principal or employer owes a duty of care to the third person ... breach of which has caused the damage for which recovery is sought, " (2) "[t]his duty is delegated by the principal or employer to the defendant," and (3) "[t]he defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault." *Canter v. Koehring Co.*, 283 So. 2d 716, 721 (La. 1973).

Plaintiff has failed to allege any duty to Plaintiff owed by Southeastern Louisiana University that was delegated to Dr. Crain and Mr. Perkins. Even if Plaintiff had alleged such a duty, Plaintiff has failed to allege any facts suggesting that Dr. Crain and Mr. Perkins breached this duty though their own personal fault. Indeed, the Louisiana Supreme Court in *Canter* clearly held that personal liability cannot be imposed due to general administrative responsibility. *Id.* Instead, personal liability may only be imposed where the defendant has personal responsibility and personal fault unless that defendant knew or should have known that his subordinate breached his duty to the plaintiff and failed to cure the risk of harm. *Id.* Since Plaintiff has failed to plausibly allege that Dr. Crain and Mr. Perkins personally owed Plaintiff a duty or knew or should have known of the failure of subordinates to perform any

13

such duties, Plaintiff has failed to state a claim against Dr. Crain and Mr. Perkins in their personal capacities.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' *Motion to Dismiss* **(Rec. Doc. 12)** is **GRANTED**. Plaintiff's federal and state due process claims, federal and state equal protection claims, intentional and negligent infliction of emotional distress claims, abuse of rights claim, and claims against Dr. John Crain and Mr. Alejandros Perkins in their personal capacities are **DISMISSED with prejudice**.

New Orleans, Louisiana, this 6th day of November, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE